It is contended that these articles had become parts of the realty, and so were not personal property, but passed under the conveyance of the mill to the claimant as fixtures.

In themselves they were still of a personal character, liable to be removed from the mill, and to pass, when so removed, by a common bill of sale, as any other article of personal property.

If Mason & Smith had given to another party a bill of sale of these articles, and afterward had conveyed the mill excepting these articles in the conveyance, can there be a doubt, that the purchaser would be entitled to them under his bill of sale? I think not. They were therefore still personal property for certain purposes, and I think for seizure and condemnation under the statute should be so considered, if the same in other respects would be liable.

A grindstone is ordinarily driven by hand, and would be liable to seizure and condemnation. Can it vary the case because it connects by a cord with the shaft and derives its power from the main wheel? A lathe is very commonly driven by a treadle, and if so would be liable to seizure. Shall it be exonerated because it is connected by belting and gearing with the main shaft of the mill?

I am well aware of the decision of the supreme court of this state in Parsons v. Copeland, 38 Me. 537, holding machinery in a woolen mill to be fixtures, although not permanently affixed, and that this decision is not found in Symonds v. Harris, 51 Me. 14; but these are local decisions which cannot control me in the construction of an act of congress, which should receive the same construction in every state of the Union. The supreme court of Maine probably would hold, that the machinery in controversy in this case would pass with the mill as a portion of the realty, if in the mill at the time of the conveyance, but it does not necessarily follow under the act of congress, that it would not be liable to seizure and forfeiture.

I think that the principle to be deduced from Hellawell v. Eastwood, 3 Eng. Law & Eq. 563, should govern this case. It was there decided as late as 1850, by the court of exchequer, that spinning-machines, which were fixed by screws, some into the wooden floor, and some into lead which had been poured in a melted state into holes in the stone for the purpose of receiving screws, had thereby become fixtures, so that they were not distrainable. I do not think the gearing made the machinery in the present case fixtures, not liable to seizure.

The water-wheel however, I do not consider as within this class of machinery. Judge Story, more than forty years ago, held that the water-wheel of a factory and its gearing was a part of the realty, and I believe no one has ever questioned it since. Most of the other articles, I understand to have been machinery specially designed for the manufacture of matches, and in my view were within the provisions of the statute. Any other construction would tend to defeat the purposes of the act, whereas, by this construction, every inducement is held forth to manufacturers to comply with its provisions, and thereby avoid its penalty. Decree accordingly.

## Case No. 15,168.

### UNITED STATES v. FRIDENBERG.

District Court, N. D. Florida. 1869.

INTERNAL REVENUE—FERMENTED LIQUORS—DEALERS—STORAGE—PENALTY—ACT JULY 20, 1868.

*Held*, that the word "receive" as used in the forty-sixth section of Act July 20, 1868 [15 Stat. 144], means "receive for sale," and that where a retail liquor dealer receives more than 20 gallons of spirits from any person other than one authorized by the act to sell such spirits, for storage only, and not for sale, he does not incur the penalty.

[Decided by FRASER, District Judge. Cited in 11 Int. Rev. Rec. 5, to the point as stated above; opinion not now accessible.]

## Case No. 15,169.

### UNITED STATES v. FRIDENBERG.

[See Case No. 15,168.]

## Case No. 15,170.

### UNITED STATES v. PRIES.

[See Case No. 5,126.]

## Case No. 15,171.

### UNITED STATES v. FRINK.

[1 Brunner, Col. Cas. 90; [1] 4 Day, 471.]

Circuit Court, D. Connecticut. 1810.

CONTINUANCE—ABSENCE OF WITNESS—AFFIDAVIT.

Where a witness in a public prosecution having been summoned, and his fees tendered to him, refused to attend, the prosecutor moved to put off the trial in order to afford time for capias; the court ruled that the trial must proceed, unless the prosecutor would make affidavit that he could not, in his opinion, safely try the cause without the attendance of the witness.

This was an indictment [against Daniel Frink] similar to the one stated in the preceding case. [U. S. v. Phelps, Case No. 16,041.] Peleg Palmer, of Stonington, a witness in support of the indictment was summoned last September, and his fees tendered. He now refused to attend.

The district attorney moved for a delay of the cause in order to afford time for a capias.

Before LIVINGSTON, Circuit Justice, and EDWARDS, District Judge.

LIVINGSTON, Circuit Justice, said the trial must go on, and the party might apply for an attachment, or bring an action for damages. Such was the rule in England and in New York.

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]